UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA L. LEWIS, )<br>    *Plaintiff*, )<br>)<br>*vs.* )<br>)<br>CAROLYN W. COLVIN, )<br>*Commissioner of the Social Security* )<br>*Administration*, )<br>    *Defendant*. ) | Case No. 1:14-cv-00854-JMS-DML |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Lisa Lewis applied for Social Security disability benefits from the Social Security Administration ("SSA") on July 7, 2011, alleging a disability onset date of June 10, 2009. [Filing No. 14-5 at 2.] Her application was denied initially on October 5, 2011, [Filing No. 14-4 at 2-4], and upon reconsideration on December 6, 2011, [Filing No. 14-4 at 11-12]. A hearing was held on January 28, 2013, before Administrative Law Judge Monica LaPolt (the "ALJ"), who issued a decision on February 21, 2013, determining that Ms. Lewis was not disabled and not entitled to receive disability benefits. [Filing No. 14-2 at 11-26; Filing No. 14-2 at 34.] The Appeals Counsel denied review on March 26, 2014, [Filing No. 14-2 at 2-4], making the ALJ's decision the Commissioner's final decision subject to judicial review. Ms. Lewis then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial. [Filing No. 1.]

**I.**
**BACKGROUND**

Ms. Lewis was fifty-four years old when she applied for disability benefits with the SSA, alleging a disability onset date of June 10, 2009.[1] [Filing No. 14-5 at 2.] She has a bachelors'

---

[1] The ALJ states in her opinion that Ms. Lewis' alleged onset date is June 10, 2010, [Filing No. 14-2 at 11], but Ms. Lewis' application reflects an onset date of June 10, 2009, [Filing No. 14-5 at 2]. The Court will use the date reflected in Ms. Lewis' application.

1

degree in elementary education and past relevant work as a grocery cashier, order clerk, parking garage attendant, debt collector, and building service assistant. [Filing No. 14-2 at 36; Filing No. 14-2 at 62-63.] At the time of her hearing in front of the ALJ, Ms. Lewis was employed full-time at a daycare as a teacher of toddlers under the age of two. [Filing No. 14-2 at 36-37.] She suffers from various impairments, which will be discussed as necessary below.[2] [Filing No. 14-2 at 13.] Ms. Lewis meets the insured status requirements of the Social Security Act through December 31, 2015. [Filing No. 14-2 at 13.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on February 21, 2013, determining that Ms. Lewis was not entitled to receive disability benefits. [Filing No. 14-2 at 11-26.] The ALJ found a follows:

- At Step One of the analysis, the ALJ found that Ms. Lewis had not engaged in substantial gainful activity[3] after the alleged disability onset date. [Filing No. 14-2 at 13.]

- At Step Two of the analysis, the ALJ found that Ms. Lewis suffered from the following severe impairments: cirrhosis secondary to nonalcoholic

---

[2] Ms. Lewis detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Lewis, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). The ALJ explained that Ms. Lewis had only been working at the daycare for a short time, so her earnings had not yet posted to her account and, therefore, substantial gainful activity was "not definitely shown." [Filing No. 14-2 at 13.] She also noted "it would be necessary to determine whether any consecutive twelve-month period of disability was present before the claimant returned to full-time work," so "the sequential evaluation continues." [Filing No. 14-2 at 13.]

steatohepatitis; mild chronic obstructive pulmonary disease; and obesity, in combination. [Filing No. 14-2 at 13.]

- At Step Three of the analysis, the ALJ found that Ms. Lewis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14-2 at 19.]

- After Step Three but before Step Four, the ALJ found that Ms. Lewis had the residual functional capacity ("RFC") to perform "less than a full range of light work."[4] [Filing No. 14-2 at 24.] The ALJ found that Ms. Lewis "can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs [, but] can never climb ladders, ropes, or scaffolds." [Filing No. 14-2 at 24.] The ALJ also found that Ms. Lewis can tolerate "moderate exposure to airborne irritants, including, but not limited to, fumes, odors, dust, and gases." [Filing No. 14-2 at 25.]

- At Step Four of the analysis, the ALJ found that Ms. Lewis was capable of performing past relevant work as a grocery cashier, order clerk, parking garage evening attendant, and debt collector. [Filing No. 14-2 at 25.]

- The ALJ did not reach Step Five of the analysis due to her finding at Step Four that Ms. Lewis could perform her past relevant work. [Filing No. 14-2 at 25.]

Ms. Lewis sought review of the ALJ's decision from the Appeals Council, but that request was denied on March 26, 2014, [Filing No. 14-2 at 2-4], making the ALJ's decision the

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

3

Commissioner's final decision subject to judicial review. Ms. Lewis then filed this action, asking that the Commissioner's decision be reversed and an award of benefits made to her, or in the alternative, that the case be remanded for further proceedings. [Filing No. 1; Filing No. 18 at 22.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214, 122 S. Ct. 1265, 152 L.Ed.2d 330 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating the following, in sequence:

4

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. §§ 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

5

### III.
#### DISCUSSION

Ms. Lewis challenges the ALJ's decision on four grounds, arguing that: (1) the ALJ did not adequately assess medical evidence of her chronic depression, anxiety, and chronic pain; (2) the ALJ was required to, but did not, call a medical expert to testify regarding whether Ms. Lewis' impairments met Listing 12.04 or any other listing; (3) the ALJ's adverse credibility determination was erroneous; and (4) substantial evidence fails to support the ALJ's RFC determination. [Filing No. 18 at 8-21.] The Court will address each argument in turn.

#### A.     The ALJ's Assessment of Medical Evidence

Ms. Lewis argues that the ALJ "arbitrarily rejected" certain medical evidence and "substitut[ed] her erroneous opinions for the opinions of the claimant's treating and examining physicians." [Filing No. 18 at 8.] She points to several portions of the medical evidence which she claims show that she was totally disabled. [Filing No. 18 at 8-12.]

The Commissioner responds that the ALJ "properly applied the agency's 'special technique'" in finding that Ms. Lewis' mental impairments were not severe. [Filing No. 19 at 2.] Moreover, the Commissioner argues that the ALJ reasonably weighed different medical opinions, and adequately explained why she was giving certain weight to those opinions. [Filing No. 19 at 5-8.]

On reply, Ms. Lewis argues that "[t]he ALJ arbitrarily rejected these [psychiatric, psychological, and psychotherapeutic] findings of disability, based only on her own layperson's psychological 'opinions.'" [Filing No. 20 at 3.] Ms. Lewis argues that the ALJ failed to build a logical bridge from the medical evidence to her conclusion.

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d

664, 668 (7th Cir.2004). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). "[C]ourts will rarely be able to say that the [ALJ's] finding was not supported by substantial evidence." *Glenn v. Sec'y of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).

In arguing that the ALJ ignored substantial evidence of chronic depression, anxiety, and chronic pain, Ms. Lewis claims that the ALJ did not consider:

- A July 30, 2011 psychological evaluation from Dr. Thorne, reflecting a diagnosis of major depressive disorder and panic disorder with agoraphobia;

- A September 13, 2011 psychotherapy appointment at Midtown Community Mental Health Center ("Midtown"), showing that Ms. Lewis was diagnosed with major depressive disorder and had symptoms of depression;

- A September 19, 2011 evaluation from Dr. Rau, which reflected symptoms of depression, a diagnosis of major depressive disorder, and a Global Assessment of Functioning ("GAF") score of 50, "indicating she was unable to keep a job";

- A March 13, 2012 psychotherapy appointment at Midtown, where Ms. Lewis reported "racing thoughts because she had a hard time concentrating and focusing," and a depressed mood;

- An April 3, 2012 psychotherapy appointment at Midtown, which the ALJ "selectively considered," but ignored the findings proving that she was disabled; and

- A May 22, 2012 psychotherapy appointment at Midtown, which included "findings proving she was disabled."

[Filing No. 18 at 8-10.]

The Court disagrees with Ms. Lewis' assertion that the ALJ ignored, or "selectively considered," this evidence. First, the ALJ specifically referred to the July 30, 2011 report of Dr. Thorne, but went on to note that Dr. Thorne also found Ms. Lewis to be "able to sustain good eye contact and social smiling," to have a "normal" mood other than becoming tearful when discussing

7

not having a job, to have a "fairly constricted" affect that brightened at times, to have "no fidgeting or abnormal movement," normal speech, no self-injurious behavior or suicidal or homicidal ideas, no hallucinations, no paranoia or persecutory ideas, and thought processes that "remained logical, sequential, and pertinent to topic." [Filing No. 14-2 at 16.]

As to her appointments at Midtown, the ALJ also specifically addressed those records and explained why they did not support Ms. Lewis' disability claim. The ALJ noted that she "attended a couple of sessions in September 2011, and then missed multiple appointments. Her case was closed on February 13, 2012, due to noncompliance…Afterwards, the claimant returned to group therapy a month later, on March 13, 2012. In April 2012, the claimant reported that Celexa was not helping, and so she was started on Cymbalta. By May 22, her depression was much improved, and she felt 'more balanced out' with Cymbalta. By July 2012, she reported that she was doing very well. She was calmer, more relaxed, more positive and hopeful. She was planning a trip to Tennessee with her husband in September. By November 2012, she again began to miss appointments, and her chart was closed…." [Filing No. 14-2 at 16-17.] Although the ALJ did not specifically address every symptomatic notation in Ms. Lewis' Midtown records, her explanation that the records indicate Ms. Lewis gradually improved – which is supported by the records, [*see, e.g.*, Filing No. 14-11 at 23; Filing No. 14-11 at 31], is enough to adequately explain the ALJ's conclusion that the Midtown records do not support a finding of disability.[5]

---

[5] Ms. Lewis mentions "chronic pain" in the sub-heading of her first argument, but the only evidence relating to pain that she contends the ALJ ignored is in connection with the April 3, 2012 Midtown appointment. The ALJ discussed, however, that the Midtown records after April 3, 2012 indicated that Ms. Lewis was taking Cymbalta, which was helping her physical pain quite a bit. [Filing No. 14-2 at 15 (discussing Filing No. 14-11 at 20).] Any argument that the ALJ ignored evidence of "chronic pain" is unsupported.

Finally, while it is correct that the ALJ did not mention Ms. Lewis' GAF score of 50, the Court does not find this omission to require remand. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("the ALJ need not evaluate in writing every piece of testimony and evidence submitted"). "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citation and quotation marks omitted). Indeed, the Seventh Circuit has explained that GAF scores "are useful for planning treatment and are measures of both severity of symptoms and functional level[, but b]ecause the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity." *Id.* (internal citation and quotation marks omitted). The Seventh Circuit has also noted that the American Psychiatric Association "recently discontinued use of the GAF metric." *Yurt v. Colvin*, 758 F.3d 850, 853 (7th Cir. 2014). As discussed above, the ALJ adequately explained the progression of Ms. Lewis' treatment at Midtown, acknowledging her history of depression but noting that she had some normal exams and that when she complied with treatment, she "responded almost immediately, and quite well, to medication and counseling therapy." [Filing No. 14-2 at 16.] Midtown closed her case in November 2012, after she reported doing much better and began missing appointments. [Filing No. 14-2 at 16-17.] The ALJ's failure to specifically note Ms. Lewis' GAF score from July 2011 does not require remand, because the ALJ adequately explained why she found that Ms. Lewis was not disabled and the records Ms. Lewis points to do not support a different conclusion.

      **B.**    **Failure to Summon Medical Advisor Regarding Listing**

Next, Ms. Lewis argues that the ALJ erred by not summoning a medical advisor, and that she could not reasonably rely on the state agency consultants' opinions because they were from

9

2011 and did not consider medical evidence from 2012. [Filing No. 18 at 13.] Ms. Lewis argues that "[p]resumably if [the state agency consultants] had reviewed all of the evidence they would have reasonably determined that she was totally disabled." [Filing No. 18 at 13.] She points specifically to a May 22, 2012 GAF score of 45-50. [Filing No. 18 at 13.] Ms. Lewis also argues that the ALJ "cited no evidence regarding medical equivalence to a Listing but also simply assumed…that the claimant's combined impairments did not medically equal any Listing." [Filing No. 18 at 14.] The Commissioner responds that Ms. Lewis does not allege her mental impairments meet all of the criteria of a listed impairment, but merely lists evidence from after the dates of the state agency consultants' reports without explaining how they support meeting a listing. [Filing No. 19 at 12-13.] The Commissioner also argues that any error was harmless, because "on this record, no reasonable ALJ could find that Plaintiff's mental impairments met or medically equaled the requirements of the asserted listings." [Filing No. 19 at 13.] On reply, Ms. Lewis summarily reiterates the same arguments made in her opening brief. [Filing No. 20 at 8-9.]

At Step Three, the ALJ must consider whether a disability applicant has one or more conditions considered conclusively disabling. Those conditions, called "Listed Impairments," are found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Even if a disability applicant cannot satisfy the requirements of a particular listing, an applicant will still be considered disabled if the applicant can demonstrate "medical equivalence." *See* 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing"); *Id.* § 404.1526 (setting forth standards for determining medical equivalence). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotations omitted). "A finding of medical equivalence requires an expert's opinion

10

on the issue." *Id.* (citing *Barnett*, 381 F.3d at 670). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670. An ALJ's reliance on disability forms filled out by state agency physicians "satisf[ies] the ALJ's duty to consider an expert's opinion on medical equivalence." *Id.* at 671; *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (holding that the disability forms filled out by the state agency physicians "conclusively establish that consideration by a physician…designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review") (citation and quotation marks omitted); *see also* S.S.R. 96-6p at *3.

Ms. Lewis does not address the requirements of Listing 12.04 – the listing she claims she meets – or explain how any evidence from after the state agency consultants' reports supports a finding of medical equivalence with that listing. She only points out that there is evidence from after the state agency consultants' reports, and conclusorily states that "[p]resumably if [the state agency consultants] had reviewed all of the evidence they would have reasonably determined she was totally disabled." [Filing No. 18 at 13.] Ms. Lewis cites no authority for her broad proposition that an ALJ cannot rely on a state agency consultant's report if there is medical evidence in the record which post-dates the report. Here, the only more recent evidence Ms. Lewis points to are Midtown treatment notes from March 13, 2012, April 3, 2012, and May 22, 2012. [Filing No. 18 at 13.] But, as the Court has already concluded, the ALJ adequately explained that she had considered the March, April, and May 2012 Midtown treatment notes, but that they indicated Ms. Lewis had improved by May and was even planning a trip to Tennessee with her husband. [Filing No. 14-2 at 16-17.] While subsequently obtained evidence could cast doubt on the state agency consultants' earlier opinions, Ms. Lewis does not explain what, if anything, about their conclusions

is incorrect. Ms. Lewis' conclusory statement that the state agency consultants' conclusions would have been different if they had reviewed the 2012 Midtown records falls well short of an argument explaining how the ALJ's specific analysis of the subsequent evidence was deficient. Without such an argument, the Court has no basis to conclude that the ALJ erred.

In short, Ms. Lewis has not demonstrated that the ALJ's reliance on the medical expert evidence in the record was inappropriate. And when "[t]he record contain[s] adequate information for the ALJ to render a decision[,] [her] decision not to obtain…further information" is not error. *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); *see also Dye v. Astrue*, 2012 WL 4514108, *9 (S.D. Ind. 2012) ("[W]hen the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone"). Accordingly, reversal is not warranted due to the ALJ's decision not to call a medical expert.

### C. The ALJ's Adverse Credibility Determination

Ms. Lewis argues that the ALJ "did not articulate any legitimate reason for her credibility decision," "did not explain why all of the objective medical evidence did not support the claimant's complaints of disabling pain," used boilerplate language, and analyzed the issues "backwards" because the ALJ first determined her RFC and then determined her credibility. [Filing No. 18 at 16-19.] The Commissioner responds that Ms. Lewis does not address all of the reasons the ALJ provided for her credibility determination, and that the inclusion of some boilerplate language is harmless. [Filing No. 19 at 14.] On reply, Ms. Lewis simply states that the ALJ refused to accept evidence which proved her total disability. [Filing No. 20 at 10.]

The ALJ's credibility determination is typically entitled to special deference. *Sheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does

the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court," *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006).

As to Ms. Lewis' credibility, the ALJ stated "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment formed below." [Filing No. 14-2 at 24.] Ms. Lewis is correct that this language used by the ALJ is very similar to the credibility boilerplate language criticized by the Seventh Circuit. *See Bjornson*, 671 F.3d at 644-45. This boilerplate language is disfavored because, among other reasons, it "puts the cart before the horse, in the sense that the determination of [RFC] must be based on the evidence…rather than forcing the [claimant']s testimony into a foregone conclusion"; but the Commissioner is correct that the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper*, 712 F.3d at 367-68 ("[T]he simple fact that an ALJ

13

used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [s]he otherwise points to information that justified h[er] credibility determination").

Here, like in *Filus* and *Pepper*, the ALJ provided a lengthy explanation, which included numerous citations to the record, as to why Ms. Lewis' testimony was not credible. For example, the ALJ noted:

- Ms. Lewis "admitted that she was able to independently sustain her self-care activities and household chores";

- She "intended to return to her theater activities as soon as she got a job";

- She "has been able to sustain a consuming job search";

- Since November 1, 2012, she was able to work full time at a daycare center "with essentially the same level of medical problems she had before she started working";

- Although she stated that she had missed a lot of work, that was not supported by any statement from her employer;

- Her statement that she had asked her employer to work part-time, but that the employer wanted her to remain full-time because there were two job vacancies at the daycare, was "doubtful" given "today's difficult economy"; and

- Although she reported some increased symptoms in December 2012 because she was exposed to sick children on her job, she did not report that this caused her to be chronically absent from work.

[Filing No. 14-2 at 23-24.]

The Court also notes that the ALJ actually discussed Ms. Lewis' credibility *before* determining her RFC. [*See* Filing No. 14-2 at 24-25.] So Ms. Lewis' contention – routinely asserted by her counsel in other cases – that the ALJ first determined her RFC and then her credibility is incorrect in this case.

Therefore, although the use of the boilerplate language[6] is inappropriate and should not be used, its inclusion in this case was harmless. *Filus*, 694 F.3d at 868. In short, Ms. Lewis' assertion that the ALJ failed to articulate "any legitimate reason for her credibility decision," [Filing No. 18 at 16], simply ignores the ALJ's decision, which set forth numerous examples supporting the ALJ's credibility determination.[7] Accordingly, reversal is not warranted on this basis.

D.     **The Step Four Determination**

Finally, Ms. Lewis argues that the ALJ "failed to make an accurate finding of fact concerning the claimant's residual functional capacity because she ignored all of the evidence proving she was disabled from all jobs." [Filing No. 18 at 20.] Ms. Lewis claims that the ALJ failed to account for her "chronic anxiety-depression and pain syndrome" in her RFC, and "arbitrarily rejected" a psychological evaluation and medical records which "proved that she was not able to sustain any full time work and thus was totally disabled." [Filing No. 18 at 20-21.]

The Commissioner responds that the ALJ explained her decision, and that Ms. Lewis "has not identified any specific errors in the ALJ's conclusion that she could perform her past relevant work," instead "merely assert[ing] that the ALJ 'ignored all of the evidence proving she was disabled from all jobs.'" [Filing No. 19 at 14.]

---

[6] The Court notes the irony of Plaintiff counsel's use of an inapplicable boilerplate argument (used frequently in other cases) when challenging the credibility finding for using improper boilerplate language.

[7] The ALJ also discussed examples supporting her credibility determination that related to Ms. Lewis' physical symptoms. For example, the ALJ noted that Ms. Lewis began to testify that she could lift forty pounds, but "was interrupted by her attorney, who redirected her response." [Filing No. 14-2 at 23.] The ALJ also noted that Ms. Lewis stated she used a cane as needed, but "the record shows no evidence of any limited mobility due to musculoskeletal problems." [Filing No. 14-2 at 23.]

15

Ms. Lewis replies to the Commissioner's arguments in two sentences, reiterating her general argument that "[t]he ALJ failed to make an accurate determination concerning the claimant's residual functional capacity because she ignored or rejected all of the evidence proving she was disabled by her mental impairments from all jobs." [Filing No. 20 at 11.]

The Court rejects Ms. Lewis' argument, to the extent it differs from the arguments already addressed above. The Court has already found that the ALJ properly explained why she was discounting evidence of Ms. Lewis' depression – because the records also showed improvement by the end of her treatment. Additionally, Ms. Lewis mentions "pain syndrome" in connection with her argument that the ALJ erred in determining she could perform her previous jobs, but does not even attempt to explain why this is the case. Instead, Ms. Lewis cites principles of law without applying them to the facts of her case. As it has done before, the Court finds this undeveloped argument to be waived. *Woytsek v. Colvin*, 2013 WL 4479034, at *8 (S.D. Ind.2013) (citing *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988) ("an issue expressly presented for resolution is waived if not developed by argument")). Ms. Lewis' vague argument does not support remand here.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler,* 766 F.2d 284, 285 (7th Cir.1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal

basis presented by Ms. Lewis to reverse the ALJ's decision that she is not disabled. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

DATE: June 29, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**